IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHUJAA ASKARI, | : | CIVIL ACTION NO. **1:12-CV-2042** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT KERESTES, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On October 11, 2012, Plaintiff Shujaa Askari, an inmate currently confined at SCI-Mahanoy, Frackville, Pennsylvania, filed, *pro se*, this instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). On October 22, 2012, Plaintiff submitted a letter addressed to the Clerk of Court stating that after he filed his Complaint, he was sent an *in forma pauperis* form. (Doc. 5). Plaintiff also stated that he would prefer to have his case resolved by a summary trial, and he requested the Clerk to send him "an *in forma pauperis* Form for a Summary Trial." (*Id.*) We denied Plaintiff 's Doc. 5 Request in an Order dated October 24, 2012. (Doc. 6). On November 5, 2012, Plaintiff filed a proper Motion for Leave to Proceed *in forma pauperis*. (Doc. 7).

On December 5, 2012, we issued a Report and Recommendation on Plaintiff's original Document 1 Complaint. (Doc. 12). However, Plaintiff filed his Document 13 Proposed Amended Complaint on December 6, 2012, before the Court had the opportunity to review our Document 12 Report and Recommendation screening Plaintiff's original Complaint. As a

result, on December 11, 2012, the Court rejected our Document 12 Report and Recommendation as moot on the basis that Plaintiff's Document 13 Amended Complaint superceded his original Document 1 Complaint. (Doc. 14).

On December 12, 2012, Plaintiff filed a letter clarifying his Document 13 Proposed Amended Complaint, and, on December 13, 2012, filed another Amended Complaint identical to his Document 13 Proposed Amended Complaint which the Court stated would supercede his original Document 1 Complaint. (Doc. 16). Furthermore, on December 20, 2012, Plaintiff filed a document titled "Clarity Brief." (Doc. 17). Lastly, on January 2, 2013, Plaintiff filed a document titled "Declaration for Summary." (Doc. 18).

The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and § 1343(a)(3). We will now screen Plaintiff's Document 13 Amended Complaint as ordered by the Court in Document 14 and in accordance with § 1915 of the PLRA.

## II.    STANDARDS OF REVIEW.

### A.    PLRA

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 7). The Prison Litigation Reform Act of 1995, (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of

> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

**B.      42 U.S.C. § 1983**

In a § 1983 civil rights action, the plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983.").   "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor."  *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660 (citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well-settled in the Third Circuit that personal involvement of defendants in

alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**C.    MOTION TO DISMISS**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient

4

factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

### III.     AMENDED COMPLAINT ALLEGATIONS.

To reiterate, on October 11, 2012, Plaintiff filed his original Complaint pursuant to 42 U.S.C. § 1983 against the following Defendants: Superintendent Kerestes; Security Captain Sorba; Deputy of Psychology Brenda Tritt; and unnamed Staff in the LS Restricted Housing Unit at SCI-Mahanoy (the "RHU").   (Doc. 1, p. 1).   We now screen Plaintiff's Document 13 Amended Complaint as required.

In his Amended Complaint, Plaintiff improperly attempts to incorporate his original Complaint into his Amended Complaint.  (Doc. 13, p. 1).  However, this Court has stated that an "amended complaint must be complete  in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Additionally, it must establish the existence of actions by the Defendants which have resulted in constitutional deprivations.  *E.g, Rizzo v. Goode*, 423 U.S. 362, 370-73 (1976).  It should specify which actions are alleged as to which Defendants.  The amended complaint must be "simple, concise, and direct" as required by the Rules of Civil Procedure.  *See*, Fed.R.Civ.P.  8(e)(1).   Therefore, this Report and Recommendation will be addressing only the claims and relief requests Plaintiff alleges in his Amended Complaint, which as stated, supercedes his original Complaint.

Plaintiff's Amended Complaint consists of six pages. (Doc. 13, pp. 1-6).  Plaintiff alleges that the following Defendants have violated his Eighth Amendment conditions of confinement right:   Superintendent Kerestes; Security Captain Sorba; Deputy Superintendent Tritt; and unnamed Security Staff of the Restricted Housing Unit ("RHU") at SCI-Mahanoy.  (Doc. 13, pp.

1-3).  All Defendants are employed by the PA Department of Corrections ("DOC") at SCI-Mahanoy.   Thus, all Defendants are state actors.

Plaintiff alleges that he has been subjected to extreme sanctioning tactics by the officers of the RHU, stating that he is being denied proper medication, adequate recreation, and phone calls, and that the RHU's policies are "geared to accommodate sexually challenged men on the staff who desire same sex relations." (Doc. 13, pp. 1-2).  He states that Defendant Security Staff of the RHU have used "psychological assault tactics to incite the resident [Plaintiff]" and have sexually solicited him and used "entrapment (sic) tactics to control and threaten the residents (sic) and non-security staff."  (Doc. 13, pp. 3-4).

Plaintiff further claims that because he has been declared as "Guilty But Mentally Ill," in accordance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, he should be provided with reasonable accommodations, and that because Defendants alleged have not provided him with reasonable accommodations, his Eighth Amendment conditions of confinement right has been violated.  (Doc. 13, pp. 2-3). He also claims that female officers should be permitted to work in the RHU because they are a "safer alternative than to have a sexually challenged same sex desiring man." (Doc. 13, p. 2). Furthermore, he claims that the "officers" are institutionalized and "suffering from paranoia and psychosis of their uniform." (Doc. 13, p. 2).

Plaintiff alleges that "he has exhausted all remedy(s) in addressing the conditions of confinement" and that "plaintiff has attempted to do so with no relief given." (Doc. 13, p. 1). As his requests for relief, Plaintiff is seeking:(1) compensatory damages against Defendants in

the amount of one million three hundred forty-four thousand six hundred dollars ($1,344,600.00) plus "all charitable funds used as commonwealth (sic) character confirmation;" (2) the arrest and confinement of the officers "involved in the sanctioning regime;" (3) an injunction that incorporates Plaintiff's "Social Alternative Organization and Policy(s);" and (4) an unspecified declaratory judgment. (Doc. 13, pp. 5-6).

IV.  **DISCUSSION**.

   A.    **EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM**

   To reiterate, Plaintiff alleges the following conditions of confinement in the RHU have violated his Eighth Amendment rights: (1) denial of proper medication; (2) denial of reasonable accommodations under the ADA; (3) denial of phone call privileges; (4) denial of female RHU officers; (5) the implementation of policies geared to "accommodate sexually challenged men on the staff who desire same sex relations;" and (6) Defendant RHU Security Staff's psychological assault and entrapment tactics on and sexual solicitations of the RHU residents, including Plaintiff. (Doc. 13, pp. 3-4).  However, in his Amended Complaint, Plaintiff has failed for a second time to properly allege the elements of an Eighth Amendment conditions of confinement claim.

   In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

   The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air.  *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  However, the Eighth Amendment does not mandate that prisons be

free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).

To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298*. As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

9

To summarize, the Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). Furthermore, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violations of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on the facts alleged in his Amended Complaint, Plaintiff has not stated sufficient facts for the Court to conclude that his Eighth Amendment conditions of confinement claims should proceed because, as discussed below, not only has he failed to allege personal involvement of any named Defendant, but he also has failed to allege: (1) that the deprivation

alleged was objectively, sufficiently serious; and (2) that any Defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*. Also, insofar as Plaintiff avers that the RHU staff has implemented "policies (sic) [] geared to accommodate sexually challenged men on the staff who desire same sex relations" and that the RHU lacks female staff, we do not find that these allegations amount to a viable Eighth Amendment conditions of confinement claim. (Doc. 13, p. 2).

Furthermore, in addition to failing for a second time to properly allege the elements of an Eighth Amendment conditions of confinement claim, Plaintiff has also failed for a second time to properly allege this claim against all Defendants. With regards to Defendants Kerestes and Tritt, Plaintiff alleges that supervisory Defendants Kerestes and Tritt have full knowledge of the aforementioned Eighth Amendment conditions of confinement violation as described by Plaintiff in his Amended Complaint. (Doc. 13, pp. 1, 3). Plaintiff states that, in response to his grievances regarding his confinement claims, Defendants Kerestes and Tritt have not provided Plaintiff with relief. (*Id*.). Therefore, Plaintiff is alleging that Defendants Kerestes and Tritt were personally involved in his Eighth Amendment claims based on their responses to his grievances appeals. In the body of his statement of claims, as detailed above, Plaintiff does not state any other personal involvement of Defendants Kerestes and Tritt beyond that of their role as grievance responders.

It is well-established that inmates do not have a constitutionally-protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th

Cir.1991)(ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that a prison official's handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, 138 Fed. Appx. 414 (3d Cir. 2005) (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D.Pa. 2010). Thus, even if the prison officials allegedly failed to process the prisoner's grievances, no constitutional claim exists. Therefore, Defendants Kerestes and Tritt are not proper Defendants because they are named in Plaintiff's Amended Complaint only in relation to their responses to his grievances and his appeals and, based on the doctrine of *respondeat superior*.

With regards to Defendant Captain Sorba, Plaintiff alleges that Defendant Security Captain Sorba is "in charge of the staff in the Restricted Housing Area where the defendant has been sanctioned to with the knowledge that the area is not equipped (sic) to handle a person with a mental disability." (Doc. 13, p. 4). However, Plaintiff does not allege that Defendant Sorba was personally involved in the alleged violations of his Eighth Amendment rights regarding the conditions of confinement in the RHU at SCI-Mahanoy. As stated, in order to properly raise a § 1983 claim, a plaintiff must allege personal involvement of each defendant with respect to each alleged constitutional violation, and failure to do so will result in dismissal of the Defendant.

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010), repeated the

personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

*See also Santiago v. Warminster Tp.,* 629 F.3d 121 (3d Cir. 2010).

Plaintiff has not alleged any personal involvement of Defendant Sorba because he has failed to allege that Sorba played an affirmative part as a supervisor in the alleged violation of Plaintiff's Eight Amendment rights, including his claim that the RHU officers used psychological tactics to incite inmates in the RHU. Instead, Plaintiff bases Defendant Sorba's liability on the doctrine of *respondeat superior* based on Sorba's position as Security Captain, which as discussed by the *Rogers* Court, is not a proper basis for personal liability in a § 1983 action. *See*

*Rogers, supra*. Furthermore, as discussed in *Rogers*, there is no affirmative constitutional duty to train, supervise or discipline to prevent unconstitutional conduct. Therefore, in his Amended Complaint, Plaintiff has failed for a second time to properly allege Defendant Sorba's personal involvement in his alleged Eighth Amendment conditions of confinement claim.

With regards to Defendants Unnamed Security Staff of the RHU, Plaintiff has also failed for a second time to properly allege personal involvement of unnamed Defendants RHU Security Staff of SCI-Mahanoy because he has failed to identify by name the staff members who allegedly violated his Eighth Amendment conditions of confinement rights. Instead, he generically refers to those prison employees who worked in the RHU and against whom he is alleging his constitutional claims as the "RHU Security Staff." As stated, in order to properly state a § 1983 claim, a plaintiff must allege personal involvement of each and every Defendant. Neglecting to name each RHU security staff member who allegedly violated Plaintiff's constitutional rights surely does not provide the Court with any identification of the exact Defendants who were staff in the RHU against whom Plaintiff is asserting his claims. Also, there is no way to have unnamed RHU staff members served with Plaintiff 's Amended Complaint, especially because Plaintiff does not even state a time period for his claims. Therefore, in his Amended Complaint, Plaintiff has failed for a second time to properly name and allege personal involvement of the specific RHU staff members against whom he is alleging his Eighth Amendment conditions of confinement claim.

Therefore, because, in his Amended Complaint, Plaintiff has failed for a second time to properly allege the elements of his Eighth Amendment conditions of confinement claim,

because he has only named Defendants Kerestes and Tritt as Defendants in this claim based on their grievance and appeals responses and, on the doctrine of *respondeat superior*, because he has failed for a second time to allege Defendant Sorba's personal involvement beyond that of *respondeat superior*, and because he has failed for a second time to name and allege personal involvement of specific RHU security staff members, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice against all Defendants.  The Third Circuit has held that a plaintiff who has filed an *in forma pauperis* request and whose complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a complaint is subject to dismissal for failure to state a claim, the court must first allow Plaintiff leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).  Further, "[d]ismissal without leave to amend is  justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* (citations omitted). However, because Plaintiff has already had the opportunity in his Amended Complaint after our detailed 19-page R&R screening his original Complaint, to properly allege his Eighth Amendment conditions of confinement claim, we find futility in allowing Plaintiff to file a second Amended Complaint with respect to his constitutional claims.  *See Grayson*, *supra*.

### B.     ADA CLAIM

As mentioned, Plaintiff is alleging that Defendants violated his rights under the ADA, 42 U.S.C. § 12101, *et seq.*, arguing that he is protected under the ADA because was declared "Guilty But Mentally Ill" seemingly by the state court during his criminal proceedings, and, therefore, should be afforded reasonable accommodations under the ADA.  (Doc. 13, p. 2).

Plaintiff claims that Defendants have "been alerted about the conditions of the area where Plaintiff has been housed and [they have] not addressed the physiological concerns of the L5 Restricted Housing Unit." (*Id.*). Plaintiff states that Defendant Kerestes is "an obstacle in the grievance process" and that as a result, "Plaintiff has become more of a target for the educationally[-]challenged staff." (*Id.*). He further states that "Plaintiff became the target of mentally and logically challenged staff members who are targeted by their co-workers to use their position to psychologically assault residents and non-security staff adding to the allegations preponderance." (Doc. 13, p. 2).

Plaintiff also alleges that the RHU at SCI-Mahanoy is not equipped to address the ADA issues because "there is no one to direct non-biased operations between the resident and staff." (*Id.*). He claims that the "policies (sic) are geared to accommodate sexually challenged men on the staff who desire same sex relations" and that "female officers are not permitted to work in the Restricted [H]ousing area even though it is a safer alternative than to have a sexually challenged same sex desiring man." (*Id.*). Plaintiff alleges that he has satisfied the standard that qualifies him for reasonable accommodations under 42 U.S.C. § 12102(a)(b) & (c), and that he has "introduced necessary programs because of the staff[']s direct violation of 42 U.S.C. [§] 12102(2)(C)." (*Id.*).

With regards to specific Defendants, Plaintiff alleges that Defendants Kerestes, Tritt and Sorba have knowledge that the RHU is "not equipped (sic) to handle a person with a mental disability" and that "the area is being used by questionable officers to insure (sic) a dependant psychology for manipulative sexual strong army, which violates the capacity of corrections."

(Doc. 13, pp. 3-4).  He also claims that Defendant unnamed Security Staff of the RHU have violated his ADA rights to reasonable accommodations because they "use juvenile psychological assault (sic) tactics to incite the resident and sexually solict the resident and use entrapment (sic) tactics to control and threaten the residents (sic) and non-security staff.  They also use biological assaults (sic) on the residents (sic) who are sanctioned to the Restricted [H]ousing area."  (*Id.*).

In *Carpenter v. Klopotoski*, 2010 WL 981825, *4 (M.D. Pa. 3-10-10), the Court stated:

> Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. § 24102(4) ] )." 42 U.S.C. § 12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). However, the plain language of §12132 applies only to public entities not individuals. *Yeskey v. Commonwealth,* 76 F.Supp.2d 572, 575 (M.D.Pa.1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving defendants qualify as a public entity. Therefore, the ADA is inapplicable to them and their motions to dismiss will be granted.

*See also George v. PA DOC*, 2010 WL 936778, *7.

To the extent that Plaintiff is raising a claim under Title II of the ADA, 42 U.S.C.  §12132,

the Court stated in *Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 8:

> Title II of the ADA prohibits a "public entity" from denying a qualified individual with a disability participation in the services, programs, or activities of that public entity, or access to public transportation. 42 U.S.C. §§ 12132, 12142, 12162.

None of Defendants in this instant action are a public entity. *Id*. Therefore, to the extent that Plaintiff is raising his ADA claim against Defendants in their individual capacities, we will recommend that the Court dismiss with prejudice Plaintiff's Title II ADA claim against all Defendants in their individual capacities. *See Walker v. Brooks*, 2009 WL 3183051, *10 (W.D. Pa. 9-30-09)("individuals are not subject to liability under Titles I or II of the ADA.") citation omitted. Based on the above, we find futility of any amendment as to Plaintiff's Title II ADA claim against Defendants in their individual capacities. *See Alston, supra.*

However, while Title II of the ADA is not applicable to Defendants in their individual capacities, the Third Circuit also held that when a plaintiff seeks injunctive relief, which, as discussed below, Plaintiff in this case is seeking, Title II of the ADA may be applicable to a defendant in his or her official capacity.

In *O'Donnell v. PA DOC*, 2010 WL 455246, *3 (M.D. Pa. 2-2-10), the Court stated:

> Magistrate Judge Smyser also recommended that this Court dismiss O'Donnell's claims under the ADA to the extent that she seeks relief against Beard, Moore, Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas in their individual capacities. However, pursuant to the dictates of *Koslow v. Pennsylvania*, 302 F.3d 161, 179 (3d Cir.2002) (concluding that "federal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex parte Young* doctrine"), the magistrate judge recommended that O'Donnell's claims for injunctive relief against the above officials in their official

capacities be allowed to continue. (Rec. Doc. No. 161 at 14).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> The plain language of the ADA evinces an intent by Congress that the statute only apply to public entities, *see* 42 U.S.C. §12132, and it is clear that the *Ex parte Young* doctrine allows for ADA claims to proceed against state officials in their official capacities when such claims are for prospective injunctive relief, *see Koslow,* 302 F.3d at 179. As such, we agree with the magistrate judge that O'Donnell's ADA claims against Beard, Moore, Chamberlain, Fultz, Torma, Shepler, Diggan, Bertone, and Nicholas in their individual capacities should be dismissed, ... .

Thus, while Plaintiff cannot raise his ADA claim against Defendants in their individual capacities, he can raise his ADA claim against them in their official capacities. *Id.* However, while Plaintiff can bring his ADA claim against Defendants in their official capacities for injunctive relief, we do not find that he states a cognizable claim under the ADA based merely on his allegations as discussed. According to the Third Circuit in *Lopez v. Beard*, 333 Fed. Appx. 685, 687 (3d. Cir. 2009), in order to establish a violation of Title II of the ADA, "an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132; *Robertson v. Los Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)." The Third Circuit, in *Brown v. Pennsylvania Department of Corrections*, 290 Fed. Appx. 463, 467 (3d. Cir. 2008), held that Plaintiff Brown failed to allege facts sufficient to show that the prison denied him access to mental health treatment "by reason

of" his alleged disabilities (which included mental health disabilities). In *Brown*, plaintiff had alleged that the prison "ignored his alleged disabilities in order to justify his placement in the LTSU - - not that they placed him in the LTSU because of discriminatory animus based on his alleged mental disabilities." The Third Circuit stated that since plaintiff Brown failed to allege that he was placed in the LTSU based on his protected status as mentally disabled, his ADA claim failed. *Id.*

Based on the rationale of the *Brown* Court, and the aforementioned allegations our Plaintiff sets forth in his Amended Complaint, we find that Plaintiff has not provided the Court with enough factual information to support his ADA claim against all Defendants. While Plaintiff has alleged that he is a qualified individual with a disability (in this case, a mental disability), he has not alleged that he has been excluded from participation in or denied the benefits of some prison service, program or activity, and he also has failed to allege that such exclusion, denial of benefits, or discrimination was by reason of his disability. Furthermore, as discussed below, Plaintiff has failed to properly plead his injunctive relief request. Therefore, we will recommend that Plaintiff's ADA claim against Defendants in their official capacities for injunctive relief be dismissed without prejudice allowing Plaintiff the opportunity to amend his Amended Complaint as he has only had one opportunity to properly allege his ADA claim. *See Grayson, supra*. In light of *O'Donnell,* Plaintiff may be able to amend his ADA claim for injunctive relief against Defendants in their official capacities.

C.    **REQUESTS FOR RELIEF**

1.    **Compensatory Damages**

As stated, Plaintiff requests compensatory damages in the amount of one million three hundred forty-four thousand six hundred dollars ($1,344,600.00). (Doc. 13, p. 5). Plaintiff cannot seek compensatory damages from the state actor Defendants in their official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, we will recommend that Plaintiff's damages claims against the state actor Defendants in their official capacities be dismissed with prejudice.

2.    **Criminal Charges and Prosecution**

As stated, Plaintiff requests the "arrest and confinement of the officers "involved in the "sanctioning regime." (Doc. 13, p. 5). To the extent that Plaintiff is asking the Court to file criminal charges and initiate criminal prosecution against the officers "involved in the sanctioning regime," this Court cannot grant as relief in the present case the initiation of federal criminal prosecution. The Third Circuit has held that a private person could not impose criminal liability on a defendant because he lacked standing to do so. *See Conception v. Resnik*, 2005 WL 1791699, *2, 143 Fed. Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential). This Court has no authority to grant Plaintiff relief with respect to alleged criminal conduct in this

action.  *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd. in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10); *Banks v. U.S. Attorney*, 2008 WL 3853307, *2.  Thus, insofar as Plaintiff is seeking this Court to arrest and punish Defendants for their alleged unconstitutional behavior, this request is subject to dismissal with prejudice.

### 3.    Declaratory Judgment

As stated, Plaintiff is seeking Declaratory Judgement "in the form of - the position of Pennsylvania Correctional Service in the Light of the Prisoners Litigation Reform Act and the Americans with Disabilities (sic) Act."  (Doc. 13, p. 5).

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. Moreover, even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

The first issue with Plaintiff's request for declaratory judgment is that he does not specify exactly what he is asking the Court to declare.  Secondly, he fails to allege that there is a substantial likelihood that he will suffer injury in the future if the Court does not issue declaratory judgment. Therefore, because Plaintiff has not met the standards necessary for the

Court to issue declaratory judgement, we will recommend that the Court dismiss this request without prejudice, as we do not find futility in allowing Plaintiff to amend his Amended Complaint with regards to this relief request. *See Grayson, supra*.

### 4. Injunctive Relief

As stated, Plaintiff is seeking an injunction that "incorporates the Plaintiff's [Social Alternative Organization and Policy(s)] to ensure (sic) safe operations between staff and residents." (Doc. 13, p. 5). However, injunctions may issue in only exceptional and extraordinary circumstances. *Parent v. Whinston*, 347 F. Supp. 471, 472 (E.D. Pa. 1972), *citing Miller v. Standard Nut Margarin Co.*, 284 U.S. 498 (1932). The grant or denial of a motion for a preliminary injunction is within the sound discretion of the district judge. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443(citing *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978), *cert. denied*, 449 U.S. 1014 (1980)). A preliminary injunction is not granted as a matter of right, but rather is an extraordinary measure that places precise burden's on the moving party. *Id. See also Ball v. SCI-Muncy*, 2012 WL 4352929, *4 (M.C. Pa. 10-27-10). Furthermore, as the Middle District of Pennsylvania stated, "[a]s a threshold matter, it is a movant's burden to show that the preliminary injunction is the only way of protecting the plaintiff from harm." *Ball*, 2012 WL 4352929, *4-5 (M.D. Pa. 10-27-10) (citing *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992)).

The moving party seeking a preliminary injunction must demonstrate: (1) the likelihood of success on the merits; (2) that the party will suffer irreparable harm by the denial of the injunction; (3) that granting the relief will not result in even greater harm to the other interested

23

party; and (4) the public interest will not be adversely affected by the granting of relief. *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Arthur Treacher's*, 689 F.2d at 1143. *See also Hartmann v. Maybee-Freud*, 279 Fed. Appx. 142, 144 (3d Cir. 2008); *See also Ball v. SCI-Muncy*, 2010 WL 4352929, *4 (M.D. Pa. 10-27-10).

The Third Circuit defined "irreparable harm": "[t]he word irreparable connotes that which cannot be repaired, retrieved, put down again, atoned for . . ." *Acierno v. New Castle County*, 40 F.3d 645, 653-655 (3d Cir.1994) (citations omitted). A Plaintiff can establish the "irreparable injury" element by "showing that Plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.'" *Ball*, 2010 WL 4352929, *5 (M.D. Pa. 10-27-10), *citing Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989)).

Further, immediate irreparable injury is more than merely serious or substantial harm. *Id., citing ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987)). Additionally, "the claimed injury cannot merely be possible, speculative or remote." *Id.(citing Dice v. Clinicorp, Inc.*, 887 F.Supp. 803, 809 (W.D.Pa.1995)). An injunction is not issued "simply to eliminate the possibility of a remote future injury ...." *Acierno*, 40 F.3d at 655 (citation omitted).

Finally, a court may not grant a preliminary injunction when the issues raised in the motion for a preliminary injunction are entirely different from those raised in the complaint. *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198-199 (2d Cir. 1985). "Because the purpose of preliminary injunctive relief is to maintain the status quo or

prevent irreparable injury pending the resolution of an underlying claim on the merits, the injury claimed in a motion for such relief must necessarily relate to the conduct alleged and permanent relief sought in a plaintiff's complaint." *Africa v. Vaughn*, Civ. No. 96-649, 1996 WL 677515, at p.1 (E.D. Pa. Nov. 21, 1996), *citing Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart*, 762 F.2d at 198-199; *Penn v. San Juan Hospital*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Plaintiff has not established the elements necessary for this Court to grant injunctive relief because he has failed to show either the likelihood of success on the merits of his claims or that denial of his motion would lead to irreparable harm. As mentioned above, in order to prove irreparable harm, a plaintiff must show that "[he] will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.'" *Ball v. SCI-Muncy*, 2010 WL 4352929, *4 (M.D. Pa. 10-27-10) (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989)("The preliminary injunction must be the only way of protecting the plaintiff from harm.")). Further, immediate irreparable injury is more than merely serious or substantial harm.

Furthermore, as the *Ball* Court explained, a claimed irreparable injury cannot merely be "possible, speculative or remote." *Ball v. SCI-Muncy*, 2010 WL 4352929, *4 (M.D. Pa. 10-27-10)(citing *Dice v. Clinicorp, Inc.,* 887 F.Supp. 803, 809 (W.D.Pa.1995)). Plaintiff has again failed to establish that his potential injury is more than merely possible, speculative or remote.

Most importantly, as the Third Circuit stated in *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." 882 F.2d 797, 801 (3d Cir.1989). In this case, there are other ways of protecting the Plaintiff

besides the Court issuing a Preliminary Injunction directing that Plaintiff's Social Alternative Organization be incorporated to ensure the "safe operations between staff and residents." (Doc. 13, p. 5). Also, it is not for Plaintiff to dictate the policies to the DOC as to what the safe operations of SCI-Mahanoy should be.

Therefore, because Plaintiff has not met the elements necessary for this Court to grant his request for an injunction, we will recommend that Plaintiff's request for an injunction be dismissed without prejudice, as we do not find futility in allowing Plaintiff to amend his Amended Complaint with respect to this request for relief. *See Grayson, supra*.

## V.  RECOMMENDATION.

Based on the foregoing discussion, we respectfully recommend the following:

1.  Plaintiff's Document 7 Motion for Leave to Proceed *in forma pauperis* be granted for purposes of filing this action.

2.  Plaintiff's damages relief requests to the extent they are against the state actor Defendants in their official capacities be dismissed with prejudice.

3.  Plaintiff's request for this Court to arrest and punish Defendants for their alleged unconstitutional behavior be dismissed with prejudice.

4.  Plaintiff's request for injunctive relief be dismissed without prejudice.

5.  Plaintiff's request for declaratory relief be dismissed without prejudice.

6.  Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice.

7.      Plaintiff's ADA claim be dismissed with prejudice against Defendants in their individual capacities, and without prejudice against Defendants in their official capacities for injunctive relief.


                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: January 14, 2013**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


SHUJAA ASKARI,                    :        CIVIL ACTION NO. **1:12-CV-2042**
                                  :
              Plaintiff           :        (Judge Caldwell)
                                  :
              v.                  :        (Magistrate Judge Blewitt)
                                  :
SUPERINTENDENT KERESTES, *et al.*, :
                                  :
              Defendants          :


## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 14, 2013.**


Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:


Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may

constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 14, 2013**