IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHUJAA ASKARI, | : | CIVIL ACTION NO. **1:12-CV-2042** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT KERESTES, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I.     BACKGROUND.**

On October 11, 2012, Plaintiff Shujaa Askari, an inmate currently confined at SCI-Mahanoy, Frackville, Pennsylvania, filed, *pro se*, this instant civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  On October 22, 2012, Plaintiff submitted a letter addressed to the Clerk of Court stating that after he filed his Complaint, he was sent an *in forma pauperis* form. (Doc. 5).  Plaintiff also stated that he would prefer to have his case resolved by a summary trial, and he requested the Clerk to send him "an *in forma pauperis* Form  for a Summary Trial." (*Id*.)  We denied Plaintiff's Doc. 5 Request in an Order dated October 24, 2012.  (Doc. 6).  On November 5, 2012, Plaintiff filed a proper Motion for Leave to Proceed *in forma pauperis*. (Doc. 7).

On December 5, 2012, we issued a Report and Recommendation after we screened Plaintiff's original Document 1 Complaint.  (Doc. 12).  However, Plaintiff filed his Document 13 Proposed Amended Complaint on December 6, 2012, before the Court had the opportunity to review our Document 12 Report and Recommendation screening Plaintiff's original

Complaint. As a result, on December 11, 2012, the Court rejected our Document 12 Report and Recommendation as moot on the basis that Plaintiff's Document 13 Amended Complaint superseded his original Document 1 Complaint. (Doc. 14).

On December 12, 2012, Plaintiff filed a letter clarifying his Document 13 Proposed Amended Complaint, and, on December 13, 2012, he filed another Amended Complaint identical to his Document 13 Proposed Amended Complaint which the Court stated would supersede his original Document 1 Complaint. (Doc. 16). Furthermore, on December 20, 2012, Plaintiff filed a document titled "Clarity Brief." (Doc. 17). Lastly, on January 2, 2013, Plaintiff filed a document titled "Declaration for Summary." (Doc. 18).

On January 14, 2013, we issued a Report and Recommendation ("R &R") in which we screened Plaintiff's Doc. 16 Amended Complaint and recommended the following: 1.) Plaintiff's Document 7 Motion for Leave to Proceed *in forma pauperis* be granted for purposes of filing this action; 2.) Plaintiff's damages relief requests to the extent they are against the state actor Defendants in their official capacities be dismissed with prejudice; 3.) Plaintiff's request for this Court to arrest and punish Defendants for their alleged unconstitutional behavior be dismissed with prejudice; 4.) Plaintiff's request for injunctive relief be dismissed without prejudice; 5.) Plaintiff's request for declaratory relief be dismissed without prejudice; 6.) Plaintiff's Eighth Amendment conditions of confinement claim be dismissed with prejudice; and 7.) Plaintiff's ADA claim be dismissed with prejudice against Defendants in their individual capacities, and without prejudice against Defendants in their official capacities for injunctive relief. (Doc. 19).

The District Court adopted the above mentioned R & R (Doc. 19) with its February 12, 2013 Order (Doc. 22) which directed the following: 1.) Plaintiff's motion (Doc. 7) for leave to proceed *in forma pauperis* is granted; 2.) Plaintiff's Eighth Amendment claim concerning the conditions of his confinement was dismissed with prejudice; 3.) Plaintiff's ADA claim was dismissed with prejudice as against Defendants in their individual capacities, and dismissed without prejudice to the extent that it seeks injunctive relief against Defendants in their official capacities; 4.) To the extent that Plaintiff seeks damages against the state actor Defendants int heir official capacities, the request for relief was dismissed with prejudice; 5.) Plaintiff's request for injunctive relief is dismissed without prejudice; 6.) Plaintiff's request for the court to arrest and punish Defendants for their alleged behavior is dismissed with prejudice; and 7.) Plaintiff's request for declaratory relief is dismissed without prejudice.

Thus, as the Court Ordered (Doc. 23) on February 13, 2013, Plaintiff was only permitted to file a Second Amended Complaint with respect to his ADA claim to the extent that he is seeking injunctive relief against Defendants in their official capacities.

On February 25, 2013, Plaintiff filed a Second Amended Complaint against Superintendent Kerestes, Deputy Tritt & Security Captain at SCI-Mahanoy. (**Doc. 25).** The Second Amended Complaint (Doc. 25) consists of 4 handwritten pages and 6 pages of handwritten Exhibits. Also, on February 25, 2013, Plaintiff filed 7 handwritten pages consisting of the procedural background of his case. (Doc. 25).

On March 19, 2013, Plaintiff filed a Motion for Default Judgment. **(Doc. 26).** Plaintiff mistakenly believes that he is entitled to Default Judgment against Defendants with respect to

his Second Amended Complaint since it has been over 20 days since he filed it and Defendants have not yet responded to it. However, as stated, the Court is obliged to first screen Plaintiff's Second Amended Complaint before it is served on any Defendants to determine if Plaintiff has stated a cognizable ADA claim. As such, we will recommend that Plaintiff's Motion for Default Judgment **(Doc. 26)** be denied as premature.

The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and § 1343(a)(3). We will now screen Plaintiff's Document 25 Second Amended Complaint as obliged by the PLRA. *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

## II. STANDARDS OF REVIEW.

### A. PLRA

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 7). The Prison Litigation Reform Act of 1995, (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

4

B.  **MOTION TO DISMISS**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,*[556 U.S. 662], 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

### III. SECOND AMENDED COMPLAINT ALLEGATIONS.

To reiterate, on February 25, 2013, Plaintiff filed his Second Amended Complaint against the following Defendants: Superintendent Kerestes; Deputy of Psychology Brenda Tritt; and unnamed Staff in the LS Restricted Housing Unit at SCI-Mahanoy (the "RHU"). (Doc. 25,p. 1). As stated above, Plaintiff was only permitted to file a Second Amended Complaint with respect to his ADA claim to the extent that he is seeking injunctive relief against Defendants in their official capacities. We now screen Plaintiff's Document 25 Second Amended Complaint as required.

Plaintiff's Second Amended Complaint consists of four pages (Doc. 25, pp. 1-4) with six pages of handwritten "Exhibits for discovery" attached. (*Id.*, pp. 5-10). Plaintiff's Second Amended Complaint is largely unintelligible much like his earlier pleadings. Furthermore, the format of his Second Amended Complaint is not proper as per Federal Rule of Civil Procedure 8(a). Rule 8(a) requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests; (2) the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief sought by the pleader.

In order to comply with Rule 8, a Complaint must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed

6

the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer. *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986).

As stated above, Plaintiff's Second Amended Complaint (Doc. 25) is largely unintelligible and was not presented in accordance with the requirements set forth above. Thus, his instant pleading is improper.

Plaintiff states that he is confined in the Level 5 housing area on Administrative Status at SCI-Mahanoy, and he alleges that the "officers are not aware of even his housing status." He essentially complains about the prison staff in the Level 5 housing area and, he seeks this Court to replace the psychology staff in the Level 5 housing area. Plaintiff is also again complaining about the conditions in the Level 5 housing area, including visitation and "psychological strong arming." (Doc. 24, p. 6). However, as stated, the Court has already dismissed with prejudice Plaintiff's Eighth Amendment claims regarding the conditions of his confinement. (Doc. 22).

In Second Amended Complaint, Plaintiff claims that he has been declared as "Guilty But Mentally Ill," in accordance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. Plaintiff states that he was "inhuman[e]ly" sanctioned to be confined in the Level 5 housing area at the prison "under the color of protection." Plaintiff further claims that his placement in Restrictive Housing Unit ("RHU") and the conditions in the RHU are violations of the ADA. (Doc. 25, p. 1-2). Plaintiff further states that "the sanctioning area described as 'the [RHU] Level 5 Security Placement Resident Housing Unit' is in violation of the ADA

7

Managemental (sic) and Correctional Procedures." Plaintiff alleges that "the Administrative Custody for Level 5 residents is not [equipped] to address the concerns of Level 5 questionable offenders." Plaintiff further states that "the security staff in the Level 5 Area use juvenile psychological assaults and then psychology staff are aware of their (i.e. security(s)) disregard for the facts of psychosis." (*Id.*, pp. 2-3).

As relief to address his concerns, Plaintiff states that he requests an injunction requiring the security staff in Level 5 area to change from authority outfits into civilian garments to alleviate the psychosis of the uniform. Plaintiff also requests that the Court require the Level 5 area of the prison to allow cigarettes and music and food, etc. Further, Plaintiff requests the Court to order a program for work, arts and crafts for the Level 5 residents as well as school, library and other activities, including church activities. (*Id.*, p. 3).

Similar to the allegations in Plaintiff's Amended Complaint (Doc 13), in his latest pleading Plaintiff again states that the Level 5 resident housing area needs a "co-ed staff placement with a mild administrative address to the residents remedial conduct (sic)." (*Id.*, p. 4). Furthermore, the Plaintiff states that the Level 5 resident housing area "needs adequate recreation, phone use, and shower and grooming availability." Additionally, Plaintiff requests that the Level 5 resident housing area commissary be changed so that it is the same as the general commissary and, that the Level 5 resident housing area work policy be changed. (*Id.*, p. 4).

Plaintiff states that all of the officers who now work in the Level 5 resident housing area should be replaced and, that he should be "transitioned (sic) to administrator in the area" as

the minimum date for his sanctions expire either at the discretion of the prison or in 2017, whichever is the safer alternative.

IV. DISCUSSION.

As stated above, Plaintiff's Second Amended Complaint is largely unintelligible much like his prior pleadings. Plaintiff is alleging that Defendants violated his rights under the ADA, 42 U.S.C. § 12101, *et seq.*, arguing that he is protected under the ADA because was declared "Guilty But Mentally Ill" seemingly by the state court during his criminal proceedings, and therefore, he should be afforded reasonable accommodations under the ADA, including those detailed above. (Doc. 25, pp. 1-4). It appears that due to the finding in Plaintiff's criminal proceedings that he was guilty but mentally ill, he was placed in the Level 5 resident housing area of the prison and that he will remain there in the discretion of the DOC or until 2017, whichever is the safer alternative. Plaintiff further states that his placement in Restrictive Housing Unit and the conditions in the Level 5 resident housing area are violations of the ADA. (*Id.*, p. 2).

Plaintiff also alleges that the RHU at SCI-Mahanoy is not equipped to address the ADA issues of "Level 5 questionable offenders." (*Id.*, p. 3). He further claims that "the security staff in the Level 5 area use juvenile psychological assaults and the psychology staff are aware of their (security's) disregard for the facts of psychosis." (*Id.*, p. 3). Furthermore, Plaintiff requests, in part, that "the security in the Level 5 area change from authority coordinated outfits into civilian garments to alternate the psychosis of uniform." (*Id.*, p. 3).

9

Additionally, Plaintiff states that "the Level 5 Resident Housing area needs a co-ed staff" and that "the housing area also needs adequate recreation, phone use and shower and grooming availability." Plaintiff further states that the commissary in the RHU should contain same items as the commissary in the "General Commissary." (*Id.*, p. 4).

As stated in the District Court's Order (Doc. 22), Plaintiff cannot raise his ADA claim against Defendants in their individual capacities. Rather, Plaintiff can only raise his ADA claim against Defendants seeking injunctive relief in their official capacities. However, while Plaintiff was allowed to amend his ADA claim against Defendants in their official capacities for injunctive relief, we do not find that he states a cognizable claim under the ADA based on his allegations raised in his Second Amended Complaint as discussed above.

According to the Third Circuit in *Lopez v. Beard*, 333 Fed. Appx. 685, 687 (3d Cir. 2009), in order to establish a violation of Title II of the ADA, "an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132; *Robertson v. Los Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)." The Third Circuit, in *Brown v. Pennsylvania Department of Corrections*, 290 Fed. Appx. 463, 467 (3d Cir. 2008), held that Plaintiff Brown failed to allege facts sufficient to show that the prison denied him access to mental health treatment "by reason of" his alleged disabilities (which included mental health disabilities). In *Brown*, Plaintiff had alleged that the prison "ignored his alleged disabilities in order to justify his placement in the LTSU - - not that they

10

placed him in the LTSU because of discriminatory animus based on his alleged mental disabilities." The Third Circuit stated that since Plaintiff Brown failed to allege that he was placed in the LTSU based on his protected status as mentally disabled, his ADA claim failed. *Id*.

Based on the rationale of the *Brown* Court, and the aforementioned allegations Plaintiff Askari sets forth in his Second Amended Complaint, we again find that Plaintiff has failed to state a cognizable claim under the ADA against all Defendants. While Plaintiff may have alleged that he is a qualified individual with a disability (in this case, a mental disability), he has again failed to allege that he has been excluded from participation in or denied the benefits of some prison service, program or activity, due to his disability. Plaintiff merely alleges that the prison services, programs and activities in the Level 5 housing area are not the same as in the general population. Furthermore, as discussed below, Plaintiff has failed to properly plead his injunctive relief requests, in part, seeking the same prison services, program or activities available in general population, as well as the replacement of the entire staff in the Level 5 housing area. We find that Plaintiff is not entitled to any of the requests for relief he seeks in his Second Amended Complaint. Also, the transfer of an inmate to a more restrictive housing unit at the prison does not violate the Due Process Clause "so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532 (1976). As stated, the Court has already dismissed with prejudice Plaintiff's conditions of confinement claims in the present case. Further, Plaintiff has no constitutional right to any particular classification or custody level in prison. *See Wilson v. Horn*, 971 F.Supp.

11

943, 947 (E.D. Pa. 1997).

We also find that Plaintiff is largely requesting relief in the form of Court intervention and management while he is in prison, *i.e.,* directing the DOC and SCI-Mahanoy as to what programs and services should be available to inmates in Level 5 and, what staff should work in Level 5 and what staff should wear. The Court will not generally interfere with prison administration matters such as how the DOC should operate Level 5 housing area at the prison. The Court should give significant deference to judgments of prison officials and the DOC regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002); *Levi v. Ebbert*, 2009 WL 2169171, *6 (M.D. Pa.).

Therefore, we will recommend that Plaintiff's ADA claim in his Second Amended Complaint against Defendants in their official capacities for injunctive relief be dismissed with prejudice. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Further, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id*. (citations omitted). We find that the Court should not allow Plaintiff the opportunity to again amend his pleading a fourth time since he has had three opportunities to properly allege his ADA claim against the Defendants. Based on the above, we now find it would be futile to give Plaintiff yet another opportunity to amend his Complaint and we find that it would result in

undue prejudice to Defendants.

## V. RECOMMENDATION.

Based on the foregoing discussion, it is respectfully recommended that Plaintiff Askari's Second Amended Complaint **(Doc. 25)** be dismissed with prejudice. It is also recommended that Plaintiff's Motion for Default Judgment **(Doc. 26)** be denied. Further, it is recommended that the Court close this case.



s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: March 22, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHUJAA ASKARI, | : | CIVIL ACTION NO. **1:12-CV-2042** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| SUPERINTENDENT KERESTES, *et al.*, | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 22, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may constitute a waiver of any appellate rights.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**



**Dated: March 22, 2013**